JS 44
(Rev. 12/96)

ORIGINAL

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Dewayne Wells

## DEFENDANTS
The Home Depot

**3 03CV-0376H**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Dallas
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Dewayne Wells
1103 Honeysuckle Way #1214
Arlington, TX 76011

ATTORNEYS (IF KNOWN)

FEB 20 2003

NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | **PERSONAL INJURY** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | ☐ 362 Personal Injury — Med Malpractice | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 365 Personal Injury — Product Liability | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | **PERSONAL PROPERTY** | ☐ 791 Empl Ret Inc Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 370 Other Fraud | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 371 Truth in Lending | | | |
| ☐ 290 All Other Real Property | ☐ 380 Other Personal Property Damage | | | |
| | ☐ 385 Property Damage Product Liability | | | |
| | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | |
| | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | |
| | ☒ 442 Employment | **HABEAS CORPUS:** | | |
| | ☐ 443 Housing/Accommodations | ☐ 530 General | | |
| | ☐ 444 Welfare | ☐ 535 Death Penalty | | |
| | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |

## VI. CAUSE OF ACTION (CITE THE U S CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Title VII

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23
DEMAND $ 6,500,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE: 2/20/03

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DEWAYNE WELLS<br>　　　Plaintiff, | §<br>§<br>§   CAUSE NO.<br>§ |
| v. | § 3   03CV-0376H<br>§ |
| THE HOME DEPOT, INC.<br>　　　Defendant. | §<br>§ |

### PLAINTIFF'S INITIAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, the Pro Se plaintiff, DEWAYNE WELLS, (hereinafter "Plaintiff"), as and for his complaint against the Defendant, THE HOME DEPOT, INC., (hereinafter "Defendant") respectfully sets forth and alleges as follows:

#### INTRODUCTION

1.  This is an action for injunctive relief and money damages on behalf of the plaintiff who was prospectively deprived of his Constitutional and Statutory rights as a result of defendant's policy and practice of differentiating between the manner in which the plaintiff; was unlawfully treated and the defendant not following its own policy.

2.  Defendant's illegally, maliciously, and without prior notice that they would violate the laws and Constitution of the United States and the State of Texas and thereby violate plaintiff's civil rights, implemented the violation by which the plaintiff; was unlawfully treated and not provided the same benefits as other similar situated employees due to his race. In addition, defendant altered the terms and conditions of plaintiff's employment because of race

discrimination.

## NATURE OF THE ACTION

3.  This is an action for damages and relief under Title VII of the Civil Rights Act, 42 U.S.C.A. § 1981, for Race Discrimination. Plaintiff files this suit in order to correct unlawful employment practices on the basis of the Plaintiff's race, and to make Plaintiff whole. Defendant unlawfully treated Plaintiff, a member of a protected group, who was qualified for his position. Because of Plaintiff's tactics, the defendant failed to provide him with reasonable accommodation and a non-hostile work environment; and engaged and conspired amongst themselves in a consorted effort to systematically discriminate against the Plaintiff. Plaintiff was constantly subjected to facially neutral employment practices that created such statistical disparities disadvantaging African-American members, including the plaintiff, which shows such treatment is functionally equivalent to intentional discrimination.

4.  This is also an action for injunctive relief on behalf of the plaintiff, to prohibit defendant's unlawful implementation of a policy directed towards African- American employees, including the plaintiff, which alters the terms and conditions of their employment.

## JURISDICTION AND VENUE

5.  This action alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000-e, et seq., 42 U.S.C. §§ 1981, and Texas common law. Jurisdiction is founded on 42 U.S.C. 2000-e, et seq., 28 U.S.C. §§ 1331, 1343 (1)(2)(3)(4). Venue is proper in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1391 because the claims arose in this district. Plaintiff further alleges violations of the State of Texas law.

6.  The rights, privileges, and immunities sought herein to be redressed are also those

secured by the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, and state and federal provisions against race discrimination.

## TITLE VII PREREQUISITES

7. During the month of April 2002, plaintiff filed a complaint with the United States Equal Employment Opportunity Commission, hereinafter referred to as the "EEOC".

8. Subsequent to Plaintiff's filing of the complaint, Plaintiff sought a "Right to Sue Letter" from the EEOC.

9. The EEOC then issued a Right to Sue Notice, advising Plaintiff that he had the right to institute a Civil Action under Title VII on or about November 20, 2002.

10. Plaintiff complied therewith by filing suit with this Court within the 90 day limitations period.

## PARTIES

11. Plaintiff is a resident of Texas, a citizen of the United States, and is over twenty-one (21) years of age.

12. Plaintiff is employed by the Defendant.

13. The defendant was and is a private corporation organized and existing under and by virtue of the law of the State of Texas.

## BACKGROUND

14. At present, Plaintiff is an associate employee with the defendant.

15. Plaintiff has been with The Home Depot, Incorporated for over Five (5) years. During that time period, the records, awards, and reviews indicate that Plaintiff's work has been outstanding. Plaintiff is both dependable and reliable, and that Plaintiff consistently goes

Plaintiff's Initial Complaint                                                                                          Page 3

beyond the call of duty.

16. Plaintiff began working for the Defendant in November 1997, and has received good evaluations during his employment. Beginning in January 1999 and continuing to the present, Plaintiff has been denied interviews for available promotional positions. Plaintiff is qualified for and eligible for promotional consideration according to the company promotional policy. Plaintiff has attempted to be promoted on numerous occasions at the store where he currently works, but has not been promoted.

17. At the September 1997 job conference, Home Depot told the participants that the Associate Managers program would last one year and then hired personnel would all become assistant managers. After being in the program a year and a half, Home Depot promoted two white females (Jennifer John and another white female associate manager) to assistant managers. At that time I was more qualified then both of my counterparts. The second female to get promoted was in the program less the most of the other Associate managers. After my two counterparts got promoted myself and another black associate manager (Roland Copeland) when to the HR department to complain about discrimination, we both spoke with the HR director Charlie _____. During that period there were not any African-American Assistant managers in our district and we brought that to the HR Director's attention. I also stated at that time that I had been in the position but had not received a pay raise since I had been with the company and that I knew of two white associate managers (Jennifer John and Terry Spangler) who had received a raise in pay. About 2 months after that meeting I was transferred to the Arlington, Texas, store No. 554.

18. When I transferred to Arlington, I was given the responsibilities of an assistant

manager over the overall store and I was also responsible for managing the Paint department. After being manager of the paint department for only about 2 months, my department head (Gordon James) and I were moving a paint machine out of the overhead because I noticed one Sunday night and thought it was a big safety issue. Mr. James told me that he was told to put it there by another department head (Dave Booba). Mr. Booba was a department head who did illegal jobs in the store for the store manager (Jan Patterson). Mr. Booba was an hourly associate who did salary things throughout the store, which at that time was illegal. He also had keys that other hourly associates and myself did not have. After seeking the paint machine in the overhead, I decided right at that present time that Mr. James and I would take it out of the overhead. It being there was a serious safety issue. While Mr. James and I was taking it back to the receiving room it slid off the pallet damaging the machine. At the time of moving the machine we did all of the safety pre-cautions for moving stock. We had spotters, people watching that were in our department and we also had about 12 other associate looking on but the store manager (Jan Patterson) and the lost prevention manager (Scott Kroshier) said that they did not hear the machine fall. Other associates in the store that night who where not as close as Ms. Patterson and Mr. Kroshier said they heard it but the two said they did not. After the accident the store manager Ms. Patterson did not follow policies. She did not send us out for a drug test. This happened on a Sunday night and on Wednesday, I was demoted. I was demoted and 18% of my paid was taken away. I had to alter my living style. I was transferred to another store in Arlington, No. 541. A year later I found out from Mr. James that he was moved to another store but got his department head position back in 2 weeks. He also told me that Kai Zalatoris did not take any of his money away from him.

19. When I went to store No. 541, I was given the responsibility of Front End Supervisor. I only received one week of training for this position. My immediate supervisor was Patti Babb. After only being there a week Ms. Babb approached me and told me that she was intimidated by me being here working for her because she had nothing to do with me being in the position and I had been in management and I also had a college degree. Another assistant manager (Jeff Price) told me that Patti and the store manager had a fuss about me being in the position. Jeff said himself, Jodie Hancock and Kris Warnock were in the room at the time of the argument. Jeff Price also stated to me that store manager (Carl Perry) told him that I would be trouble one day because I was "by the book". Jeff Price also stated that Patti was out to remove me from the position so that she could get one of the white female friends in the position. The 6 months I was front end supervisor Patti Babb did everything she could to removed me out of the position. She even had a head cashier (Kathy Bagley) spy for her because everything I talked about was repeated to her. While being FES Patti Babb wrote me up on several occasions for things my counterparts were not getting wrote up for. Patti even sent me home from work one day without giving me a reason. I went to the District Manager (Kai Zalatoris) and the store manager (Carl Perry) to tell them I thought that the things that were happening to me were acts of discrimination. At that time I also told both of them that I thought they were practicing bad hiring practices because the last few blacks and Hispanics that were hired were al hired to work outside as lot loaders. At that time I had 5 head cashiers who worked directly for me (Debra, Cheryl, Kathy, Erin, and Jennifer). Patti Babb was also doing her best to get rid of Cheryl Jacobs one of the head cashiers who happens to be African-American. About a 1 month later I was demoted to Associate and $1 of my pay was taken away. Management could not take my money

away because they did not give me money to be in the position. Jeff Price also stated to me that bad promoting practices were going on in our store. Associate were being given promotions and management was forging and falsifying the interview process. After being demoted I called the HR manager (Lyle Stilwill) for our store to explain to her what had happened to me over the last 2 years, she even threw away a write up that Patti had done because she said it was contradictory. At that time I repeated again that the things that were happening to me were unfair. I even told Lyle about my problems in Chicago. She said she would call Chicago to get information. Lyle said she would get back with me. After weeks went by I called Lyle and she never returned my calls. Later I saw her at one of our Sunday morning store meeting and I approached her and she said it was not a good time to talk about the problems. Only about 2 months later the store manager gave me a merits raise and I wondered why because I hadn't done anything different from before. Three months after being demoted the store manager (Carl Perry) offered me another department head position. At that time I asked him what has he done since my demotion to improve me or develop me for another department position and he said nothing. I ask him if I was being set up again. He could not respond so I denied the promotion. After being demoted from the Front End Supervisor's position I notice that the current FES was not being written up for the same things that I got written up for. I bought this to the Store Manager's, Carl Perry and assistant manager, Patti Babb attention but the same punishment was not given. While being an associate I was again being written up for things that my white counterparts were not getting written for. Months later after learning and developing myself with the help of another I seek a department head position. I had already registered in the JPP which is where you complete in the computer the next level of job you want. Over the next 2 years my performance reviews were

Plaintiff's Initial Complaint                                                                 Page 7

solid and above solid more than once. I spoke with the store manager at the time Chris _____ to question why I was not be giving the same opportunity as my counterparts. Months went by, know opportunity was given. After seeing other promoted that were less qualified that me again I ask for a meeting with the store manager (Stacy Carr). It took him, Stacy Carr, about 2 months after I asked to meet with him before we met. Stacy Carr and Instore HR manager Marilyn Groce met with me and I asked him why I was not getting the opportunity to get promoted. I again stated that my performance reviews were solid and above solid. He stated at the time that I was negative and I was getting to work late. I told him that SOP says 7 minutes is late. I then questioned him what documents did he have to say I was late and also told him that if it was a problem why wasn't it brought to my attention in a performance notice or counseling notice. I also asked him at that time was every employee in the store going by the same rules that applied to me about being tardy. He stated that this meeting was about me. In that meeting I also bought to their attention my work performance gives me the right to be given the same opportunities as my counterparts. Over the past two years these associates got promoted to a department head position. (I that time I was as qualified or more qualified then all of them. There names are, Rhonda Moreno night crew and hardware, Nick Hajek in garden, Curtis Chambers to Grand Prairie, Mike to N. Arlington, Brian to pro-desk and Michael Wiley to hardware. This is only names of people that were promoted in my store. Other around the district were getting promoted also. One time I was written up for not dusting a light fixture but no one else was written for not completing the same task. I was also written up for being in the break room with the phone from my department, this was a write up that was pushed by the store manager, Stacy Carr. Everyday, my counterparts and supervisors are in the break room with their phone but I am

the only one to get written up for it. I actually have a sign statement by two other employee who are white who have been in the break room with their phones on several occasions but have never been written up. Everything I do is looked at more closely than my counterparts. My performance reviews speak that I am a asset to Home Depot.

20. After experiencing and being subjected to discrimination on a daily basis for an extended period of time, presently:

    a. Presently, Plaintiff is taking medication for a job stress-related illness;

    b. Plaintiff is mentally consumed with these discriminatory issues;

    c. Plaintiff's personal life has suffered because of the stress Plaintiff feels due to the hostile and discriminatory work environment he has faced on a daily basis;

    d. Plaintiff has sought assistance, to no avail, with administrators of the defendant - in a private session and once in a session with the V.P. of Human Resources Frank Rossi; District Manager- Kai Zalotoris; Store Manager - Stacy Carr; Store Manager - Carl Perry; In Store Human Resource Manager - Marilyn Groce and the Central (Southwest) Divisional Human Resource Manager - Lyle Stilwell.

21. Plaintiff has suffered emotionally and physically due to the routine discriminating antics of the defendant

22. The Defendant has shown discrimination against the Plaintiff by not adhering to its own policy.

**First Cause of Action**
**TITLE VII**

23. The Plaintiff herein reaffirms and reallege each and every assertion set forth in

this Complaint and further claims that:

24. Plaintiff was discriminated against by defendant based upon his race with regard to the treatment received from the Defendant. Plaintiff was wrongfully discriminated against. Plaintiff, and other African-American employees received deferential treatment from similarly situated Caucasian employees with regard to the working conditions while on the job, up to and including discharge. Thus, Defendant's action had a disparate impact on the plaintiff. Notice was timely provided to supervisors and in certain instances, supervisors participated in offensive behavior.

25. Plaintiff was unlawfully subjected to a hostile work environment in retaliation for his opposition to Defendant's unlawful polices and practices. In this sense, he is the victim of disparate treatment when compared to the Caucasian employees with inferior records who were not subjected to such adverse conditions.

26. The Defendant is the direct cause of Plaintiff's injuries including but not limited to compensatory and punitive damages, back pay, front pay, attorney's fees, prejudgment and post-judgment interest and any other such further relied, at law or in equity, as the Court deems necessary and proper.

### COSTS AND ATTORNEYS' FEES

27. Plaintiff is entitled by law to recover his costs and reasonable attorneys' fees in this action.

WHEREFORE, plaintiff demands judgment as follows:

(a) In the first cause of action compensatory damages in favor of the plaintiff against the defendant in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS and

punitive damages in the amount of SIX MILLION ($6,000,000.00) DOLLARS;

    (b)    Plaintiff is entitled to injunctive relief;

    ©    Costs and reasonable attorneys fees;

    (d)    Pre-judgment and post-judgment interest; and

    (e)    Ordering Defendant to cease their discriminatory practices including but not limited to equality in pay and rights and privileges between African-Americans and Caucasians.

    (f)    Granting the plaintiff such other and further relief as may be just.

## JURY DEMAND

Plaintiff demands a trial by jury as to each and every issue of fact raised by this position.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendant THE HOME DEPOT, INC. for compensatory, liquidated, punitive and general damages, front pay, back pay, and declaratory and injunctive relief, their share of attorney's fees, costs and interest and such other and further general relief in law or equity to which Plaintiff may be reasonably entitled.

---

Plaintiff's Initial Complaint                                                               Page 11

Respectfully submitted,

_____
Dewayne Wells - Pro Se
1103 Honeysuckle Way # 1214
Arlington, TX 76011
Telephone No. (817) 226-2151

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Plaintiff's Initial Complaint was served upon the agent for service for THE HOME DEPOT, INC., CT Corporation, 350 N. St. Paul Street, Dallas, TX 75201 on this the 20th day of February, 2003.

_____
DEWAYNE WELLS